UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN DRISCO, : | |
| : | Civil Action No. 12-2111 (ES) |
| Plaintiff, : | |
| : | |
| v. : | **OPINION** |
| : | |
| CITY OF ELIZABETH, et al., : | |
| : | |
| Defendants. : | |

**APPEARANCES:**

Edwin Drisco
Talbot Hall-Harmony Unit
100-150 Lincoln Highway
Kearny, NJ 07032
Plaintiff *pro se*

**SALAS,** DISTRICT JUDGE

  Plaintiff Edwin Drisco, a prisoner confined at Talbot Hall in Kearny, New Jersey, seeks to bring this action *in forma pauperis* pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.[1]

  At this time, the Court must review the Complaint to determine whether it should be

---

[1] This matter previously was administratively terminated based on Plaintiff's failure to submit a complete application for leave to proceed *in forma pauperis*. (D.E. Nos. 3, 4.) Plaintiff has now submitted a complete application. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and will order the Clerk of the Court to re-open this action and to file the Complaint.

dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint[2] and are accepted as true for purposes of this review.

Plaintiff alleges that, at some time in the past, he was acquitted of charges submitted by Defendant Detective Thomas Koczur of the Elizabeth Police Department. (Compl., ¶ 21). Plaintiff alleges that he later was arrested on March 25, 2009, and charged with a robbery at 162 Fifth Street, in Elizabeth, New Jersey, on February 17, 2009. (Compl., ¶¶ 5, 16). According to Plaintiff, because of the earlier acquittal, Detective Koczur went before the Union County Superior Court on May 29, 2010, seeking an indictment against Plaintiff on the 2009 robbery. (Compl., ¶ 14). Plaintiff also alleges that, because of the earlier acquittal, Detective Koczur knowingly gave false testimony to the grand jury that a Mr. Raymond Howard had positively identified Plaintiff as a participant in the 2009 robbery. (Compl., ¶¶ 15-21).

Plaintiff asserts that no victim of the 2009 robbery ever identified him from a photo array, nor did the video surveillance display Plaintiff as the robber. (Compl., ¶¶ 16, 17, 19). Plaintiff alleges that the robbery victim described the robber as a light-skinned Hispanic male, whereas he is a "darker complexion African American male." (Compl., ¶ 18). He further alleges that the charges against him were dismissed, on September 19, 2011, for lack of evidence. (Compl., ¶ 22).

---

[2] The Complaint and cover letter are dated March 21, 2012. Pursuant to the federal "mailbox rule," *see Houston v. Lack*, 487 U.S. 266 (1988) and *Burns v. Morton*, 134 F.3d 109 (3d Cir. 1998), this Court deems the Complaint "filed" as of that date. *See Woodson v. Payton*, 503 F.App'x 110, 112 n.3 (3d Cir. 2012).

Plaintiff names as defendants Detective Koczur, the City of Elizabeth, Mayor J. Christian Bollwage, the Elizabeth Police Department, and the fictitious defendants John Does 1-5[3] and ABC ENTITIES 1-5. Plaintiff asserts federal claims for false arrest and imprisonment in violation of the Fourth and Fourteenth Amendments, for malicious prosecution in violation of the Fourth Amendment, for failure to supervise, for violation of 42 U.S.C. § 1985, and pendent state-law claims for abuse of process and intentional infliction of severe emotional distress. (Compl., ¶¶ 23-24, 34). He seeks compensatory and punitive damages.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 28 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. §§ 1915 and 1915A because Plaintiff is proceeding *in forma pauperis* and because he seeks redress against government employees and entities.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

---

[3] The fictitious defendants "John Does 1-5" are not listed in the caption of the Complaint, but are identified in the text.

(2007)). To survive sua sponte screening for failure to state a claim[4], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

Finally, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. *Denton v. Hernandez*, 504 U.S. 25, 34 (1992); *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 453 (3d Cir. 1996).

### III. SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

---

[4] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

IV. ANALYSIS

A. Claims Against Fictitious Defendants

The fictitious defendants ABC Entities 1-5 are described only as "yet unknown and those unidentified municipal, county or state officials, supervisors, agents or employees or entities, individually and in their official capacity." (Compl.). The fictitious defendants John Does 1-5 are described only as persons "who acting under color of state law and under authority, custom and usage, violated the civil rights of plaintiff." (Compl., ¶ 23).

No factual allegations are made with respect to any of the fictitious defendants. While fictitious defendants "'are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed,'" *Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir. 1998) (citations omitted), Plaintiff's failure here to allege any identifying characteristics or any facts suggesting a basis for liability requires dismissal of all claims against the unnamed fictitious defendants for failure to state a claim. It is not sufficient merely to add "John Does" to the list of defendants; Plaintiff must, in the body of the Complaint, make factual allegations describing the John Does defendants and their actions. *See Kates v. Bridgeton Police Department*, No. 10-6386, 2011 WL 6720497, *1 n.1 (D.N.J. Dec. 21, 2011); *Beale v. Department of Justice*, No. 06-2186, 2007 WL 327465, *8 (D.N.J. Jan. 30, 2007); *Smith v. Creative Resources, Inc.,* No. 97-

5

6749, 1998 WL 808605, *1 n.2 (E.D. Pa. Nov. 23, 1998).

B.      Failure to Train or Supervise

Plaintiff asserts in conclusory language that various defendants are liable to him for failure to properly train and supervise employees.

It is well-settled that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Beck v. City of Pittsburgh*, 89 F.3d 966, 971-72 (3d Cir. 1996). Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," *City of Canton*, 489 U.S. at 390, and that failure to train "actually causes injury," a supervisor or municipality may be held liable. *Id.* Similarly, a supervisor or municipality may be liable for failure to supervise "only if it reflects a policy of deliberate indifference to constitutional rights." *Jewell v. Ridley Twp.,* No. 11-4231, 2012 WL 4096259, *3 (3d Cir. Sept. 19, 2012) (citing *Montgomery v. DeSimone*, 159 F.3d 120, 126-27 (3d Cir. 1998)).

In addition, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program . . . [n]either will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training . . . [m]oreover, for liability to attach . . . the identified deficiency in a city's training program must be closely related to the ultimate injury.

*City of Canton*, 489 U.S. at 390-91. *Cf. Ashcroft v. Iqbal*, 556 U.S. at 682-83 (remote supervisory government officials can be held liable for discriminatory acts of subordinates only if "they themselves acted on account of a constitutionally protected characteristic").

6

Here, Plaintiff has alleged nothing more than that an individual police officer was motivated by malice to wrongfully accuse Plaintiff of a crime by presenting false evidence against him. These actions by an individual police officer are plainly an insufficient basis for a claim against his supervisors of constitutional violations as a result of failure to train or supervise. *See Simmons v. City of Philadelphia*, 947 F.2d 1042, 1060 (3d Cir. 1991) (a plaintiff cannot establish a failure to train claim by presenting evidence of the shortcomings of an individual). This claim will be dismissed without prejudice.

C.  Vicarious Liability

The only "facts" that Plaintiff has alleged derive from the activities of Defendant Detective Koczur. Thus, except with respect to the claim for failure to train, addressed in Paragraph B, above, it appears that Plaintiff seeks to utilize a theory of vicarious liability to assert claims against the City of Elizabeth, Mayor J. Christian Bollwage, the Elizabeth Police Department, and the fictitious defendants ABC Entities 1-5 and John Does 1-5.

Local government units and supervisors are not liable under § 1983 solely on a theory of *respondeat superior*. *See Connick v. Thompson*, 131 S.Ct. 1350, 1358-61 (2011); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985); *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and

acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). *Accord Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293-96 (3d Cir. 1997); *Baker v. Monroe Twp.,* 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990), *quoted in Blanche Rd. Corp. v. Bensalem Twp.*, 57 F.3d 253, 269 n.16 (3d Cir.), *cert. denied*, 516 U.S. 915 (1995), and *quoted in Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. *Monell*, 436 U.S. at 689.

Here, Plaintiff has failed to allege any facts that would suggest that any of the municipal, supervisory, or fictitious defendants had any personal involvement in his arrest and indictment or were responsible for any policy or custom that would render them liable for any of the alleged claims. Accordingly, all claims against them will be dismissed without prejudice for failure to state a claim.

D.  False Arrest and Imprisonment

Plaintiff alleges that he was subject to a false arrest on March 25, 2009. Plaintiff fails to allege sufficient facts to state a claim. In addition, the claim appears to be time-barred.

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. *See Berg v. County of Allegheny*, 219 F.3d 261, 268-69 (3d Cir. 2000) (collecting cases); *see also Albright v. Oliver*, 510 U.S. 266, 274 (1994) (a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures). To state a Fourth Amendment claim for false arrest, a

8

plaintiff must allege two elements: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) and *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)). Probable cause exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested. *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)).

Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995); *Wallace v. Fegan*, 455 F.App'x 137, 139 (3d Cir. 2011) (quoting *Groman*). *See also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter.").

Here, Plaintiff has not alleged <u>any</u> facts regarding the circumstances that led to his arrest. Plaintiff does not state who arrested him on March 25, 2009, what information was known to that person, whether Plaintiff was arrested pursuant to a warrant, what information was provided to procure an arrest warrant, or who provided that information. For example, Plaintiff does not state when Detective Koczur testified before the Grand Jury or whether that testimony led to Plaintiff's arrest (as opposed to Plaintiff's indictment). In addition, Plaintiff alleges that Detective Koczur went to court seeking an indictment against Plaintiff on May 29, 2010, long after Plaintiff's arrest; so that activity does not relate to Plaintiff's arrest. Nor does the fact that the charges were later dropped have any relevance to whether, at the time of arrest, circumstances were such as to warrant a prudent man in believing that Plaintiff had committed

9

the robbery. Thus, Plaintiff has failed to allege facts sufficient to state a plausible claim for false arrest and false imprisonment, under either federal or state law.

In any event, the claim appears to be time-barred. Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss *sua sponte*, under 28 U.S.C. § 1915(e)(2), a *pro se* civil rights claim whose untimeliness is apparent from the face of the Complaint. *See, e.g., Jones v. Bock*, 549 U.S. 199, 214-15 (2007) (if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").[5] The requirements of 28 U.S.C. § 1915A (governing civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity) that federal courts review and dismiss any complaint that fails to state a claim parallel the provision in 28 U.S.C. § 1915(e).

Before explaining why Plaintiff's claim is time-barred here, the Court will first provide a brief overview of the governing law. Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's general or residual statute of limitations for such actions. *See Owens v. Okure*, 488 U.S. 235 (1989) (cited in *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (same). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims. *See Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citing *Montgomery v. DeSimone*, 159 F.3d 120, 126 & n.4 (3d Cir. 1998) and *Cito v.*

---

[5] *See also Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) *in forma pauperis* provisions, that *sua sponte* dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); *Hunterson v. DiSabato*, 244 F.App'x 455, 457 (3d Cir. 2007) ("district court may *sua sponte* dismiss a claim as time barred under 28 U.S.C. § 1915A(b)(1) where it is apparent from the complaint that the applicable limitations period has run") (citing *Jones v. Bock, Pino v. Ryan*) (not precedential); *Johnstone v. United States*, 980 F.Supp. 148 (E.D. Pa. 1997) (applying *Pino* to current § 1915(e)).

*Bridgewater Township Police Dept.,* 892 F.2d 23, 25 (3d Cir. 1989)). Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. *Cito*, 892 F.2d at 25; *accord Brown v. Foley*, 810 F.2d 55, 56 (3d Cir. 1987).

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of his action." *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982). *See also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 (3d Cir. 1994). "Plaintiff's actual knowledge is irrelevant. Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable. Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." *Fassnacht v. United States*, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing *Oshiver*, 38 F.3d at 1386). A § 1983 claim for false arrest typically accrues on the date of the plaintiff's arrest. *See Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998); *Rose v. Bartle*, 871 F.2d 331, 348-51 (3d Cir. 1989). In this instance, there is nothing to suggest a later accrual date under state law.

Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application. *Wilson v. Garcia*, 471 U.S. at 269. New Jersey statutes set forth certain bases for "statutory tolling." *See, e.g.,* N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable). New Jersey law permits "equitable tolling" where "the complainant has been induced or

11

tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. *See Freeman v. State*, 347 N.J. Super. 11, 31 (citations omitted), *cert. denied*, 172 N.J. 178 (2002). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Id.*

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine. *See Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

*Id.* n.9.

Based on these statute of limitations principles, Plaintiff's claim is time-barred. Here, according to the allegations of his Complaint, any claim for false arrest accrued at the time of Plaintiff's arrest, on March 25, 2009, almost three years before the date of the Complaint—March 21, 2012. This period of time far exceeds the two-year limitations period. Moreover, Plaintiff has failed to allege any facts suggesting a basis for tolling under N.J.S.A. § 2A:14-21, 2A:14-2, or any other equitable ground. Accordingly, the federal and state claims for false arrest and false imprisonment will be dismissed with prejudice as untimely.

E.  <u>Malicious Prosecution</u>

In order to state a § 1983 claim of malicious prosecution in violation of the Fourth Amendment, a plaintiff must establish the elements of the common law tort as it has developed

over time, and that there has been some deprivation of liberty consistent with a seizure. *See Johnson v. Knorr*, 477 F.3d 75, 81-85 (3d Cir. 2007); *Gallo v. City of Philadelphia*, 161 F.3d 217, 221-22 (3d Cir. 1998).[6] Under New Jersey law, the common law tort elements of a malicious prosecution action arising out of a criminal prosecution are: (1) the criminal action was instituted by the defendant against the plaintiff, (2) it was actuated by malice, (3) there was an absence of probable cause for the proceeding, and (4) the criminal proceeding was terminated favorably to the plaintiff. *Lind v. Schmid*, 67 N.J. 255, 262 (1975). *See also Johnson v. Knorr*, 477 F.3d at 81-82.

Here, the allegations that Detective Koczur gave false testimony to the grand jury because he was disgruntled by an earlier acquittal of Plaintiff on other charges, are sufficient to permit the federal and state malicious prosecution claims to proceed beyond the screening stage as to him, only.[7] There are no factual allegations that would suggest that any other Defendant maliciously acted to initiate criminal charges against Plaintiff without probable cause.

F.     42 U.S.C. § 1985

Plaintiff asserts in conclusory fashion that the defendants have violated his rights under 42 U.S.C. § 1985. (Compl., ¶ 20).

Title 42 U.S.C. Section 1985 consists of three subsections dealing with various

---

[6] In *Gallo*, the Court noted that prosecution without probable cause probably is not, in and of itself, a constitutional tort based on a violation of substantive due process. "Instead, the constitutional violation is the deprivation of liberty accompanying the prosecution," which raises a claim of violation of the Fourth Amendment right not to be subjected to unreasonable seizures. It is for this reason that a claim for malicious prosecution must include an allegation that there was a seizure within the meaning of the Fourth Amendment. 161 F.3d at 222 (citing *Albright v. Oliver*, 510 U.S. 266 (1994)).

[7] The Court notes that the claim for malicious prosecution did not accrue, and the limitations period did not begin to run, until the criminal proceeding was resolved in Plaintiff's favor on September 19, 2011. *Heck v. Humphrey*, 512 U.S. 477, 489 (1994). Accordingly, this claim is not time-barred.

13

conspiracies to interfere with civil rights. Subsection (1) provides a remedy, generally, if two or more persons conspire to prevent any person from accepting or holding any office, trust, or place of confidence under the United States or otherwise to prevent a federal officer from performing his duties; subsection (2) provides a remedy, generally, if two or more persons conspire to deter, by force, intimidation, or threat, any party, witness, or juror in any court of the United States; subsection (3) provides a remedy, generally, if two or more persons conspire or go on the premises of another, "for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws."

Only subsection (3) is arguably implicated by the facts asserted here. To state a claim under § 1985(3), one must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 829 (1983).

With respect to the second element, the conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), *quoted in Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006). Thus, in order to state a claim under § 1985, there must be factual allegations suggesting some racial or otherwise invidiously discriminatory animus behind the alleged conspirators' actions. *See Kush v. Rutledge*, 460 U.S. 719, 724-26 (1983). No such factual allegations of discriminatory intent are set forth in the Complaint.

Nor are there allegations sufficient to suggest "conspiracy." The Supreme Court has

demonstrated the application of *Twombly*'s general pleading standards to a conspiracy claim.

> In applying these general standards to a [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made . . . [i]t makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a [conspiracy] claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.
>
> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a [conspiracy] claim.

*Twombly*, 550 U.S. at 556-57 (citations and footnotes omitted). Here, Plaintiff has not pleaded any facts suggesting "agreement" or "conspiracy" or even parallel conduct by any two defendants. As such, this claim will be dismissed without prejudice for failure to state a claim.

G.  State Law Claims

Plaintiff also seeks to assert claims under the New Jersey Constitution, not otherwise described, and under state law for false arrest and imprisonment, abuse of process, intentional infliction of emotional distress, negligence, and malicious prosecution. As noted above, the state law claims for false arrest and imprisonment will be dismissed with prejudice as time-barred, for the same reasons that the federal false arrest and imprisonment claims are dismissible. Similarly, the state law claim for malicious prosecution against Detective Koczur will be permitted to proceed past the screening stage, for the same reasons that the federal claim will be permitted to proceed. The state law claims for negligence and for violations of the New Jersey Constitution will be dismissed without prejudice simply because they are too vaguely pleaded to permit

evaluation. The Court will address separately, below, the alleged state law claims for abuse of process and intentional infliction of emotional distress.

   1.   Abuse of Process

Under New Jersey law, "[a] successful claim of malicious abuse of process first requires a defendant's improper, unwarranted and perverted use of process after it has been issued," and the defendant "must also reveal, after process has been issued, an ulterior purpose in securing it by committing 'further acts' which reveal a motive to coerce or oppress the plaintiff." *Wozniak v. Pennella*, 373 N.J. Super. 445, 461 (App. Div. 2004) (internal quotation marks and citations omitted), *cert. denied*, 183 N.J. 212 (2005). In other words, "an abuse of process occurs when a prosecution is initiated legitimately [but] thereafter is used for a purpose other than that intended by the law." *Mitchell v. Guzick*, 138 Fed.Appx. 496, 502 (3d Cir. 2005) (citation omitted). "There is no valid claim for abuse of process where a party carries out process to its authorized conclusion, despite also having bad intentions." *Avaya Inc. v. Cisco Systems, Inc.,* No. 10-5881, 2012 WL 2065536, at *4 (D.N.J. June 7, 2012).

"Process," as used in the term "malicious abuse of process," refers not to all legal proceedings in an action, but more narrowly "to the abuse of procedural methods used by a court to acquire or exercise its jurisdiction over a person or over specific property." *Wozniak*, 373 N.J. Super. at 461. *See also Avaya*, 2012 WL 2065536, at *3 (the term "process" refers only to "certain products of litigation that a court issues, such as a summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders" (internal quotations and citation omitted)).

> [B]asic to the tort of malicious abuse of process is the requirement that the defendant perform further acts after issuance of process which represent the perversion or abuse of the legitimate purposes of that process. Examples of "[f]urther acts" could be attachment, execution, garnishment, sequestration

16

proceedings, arrest of the person and criminal prosecution and even such infrequent cases as the use of a subpoena for the collection of a debt.

Coercive action or bad motives or intent prior or leading to the institution of the lawsuit do not suffice to expose a [party] to a cause of action for malicious abuse of process. In order for there to be abuse of process . . . *a party must use process in some fashion*, and that use must be coercive or illegitimate.

*Cohen v. Page*, 2012 WL 2199263 (N.J. Super. App. Div. June 18, 2012) (interior quotation marks and citations omitted) (emphasis in original).

Here, Plaintiff has failed to allege any facts suggesting that Detective Koczur used any court-issued process in a coercive or illegitimate manner.[8] Accordingly, this claim will be dismissed without prejudice for failure to state a claim.

2. <u>Intentional Infliction of Emotional Distress</u>

The elements of the New Jersey common law tort for intentional infliction of emotional distress were set forth by the Supreme Court of New Jersey in *Buckley v. Trenton Saving Fund Society*, 111 N.J. 355 (1988). "Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Id.* at 366. More specifically, first, the defendant must have acted intentionally or recklessly; that is, the defendant must have intended "both to do the act and to produce emotional distress," or the defendant must have acted "recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Id.* Second, the defendant's conduct must be "so outrageous in character, and so

---

[8] To the extent the Complaint could be construed as attempting to state a claim for abuse of process based on any action by Detective Koczur to improperly execute a legitimately-issued arrest warrant, such a claim would have accrued at the time of arrest, and would be time-barred. *See Wiltz v. Middlesex County Office of the Prosecutor*, Civil Action No. 05-3915, 2006 WL 1966654, *5 (D.N.J. July 12, 2006), *affirmed*, 249 Fed.Appx. 944 (3d Cir. 2007), *cert. denied*, 552 U.S. 1285 (2008).

17

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks and citation omitted). Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress. *Id.* Fourth, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." *Id.* (internal quotation marks and citation omitted). "To prove a claim for intentional infliction of emotional distress, a plaintiff's burden of proof must meet an 'elevated threshold' that is satisfied only in extreme cases." *DiClemente v. Jennings*, 2012 WL 5629659, at *8 (N.J. Super. App.Div. Nov. 16, 2012). Finally, the limitations period for a claim of intentional infliction of emotional distress is two years. *See Dipietro v. Vassallo*, 2011 WL 5573668, at *5 (N.J. Super. App. Div. Nov. 17, 2011) *cert. denied*, 210 N.J. 108 (2012).

As an initial matter, this Court concedes for screening purposes, that a police officer's knowingly false accusation that an individual committed a robbery is sufficiently outrageous and deliberate behavior to satisfy the first two elements of a claim for intentional infliction of emotional distress. Plaintiff has failed, however, to plead that he suffered any particular emotional distress as the result of Detective Koczur's actions. Moreover, to the extent that any distress arose from the arrest, as opposed to the ongoing prosecution, the two-year limitations period has expired. As discussed above, Plaintiff's arrest was nearly three years prior to the date he instituted this suit. Accordingly, this claim will be dismissed without prejudice for failure to state a claim.

## V. CONCLUSION

For the reasons set forth above, the federal and state claims for malicious prosecution may proceed as against Defendant Detective Koczur. All remaining claims will be dismissed,

18

pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim. However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies described herein, he will be granted leave to file an amended complaint.[9]

An appropriate Order follows.

/s/ Esther Salas
United States District Judge

Dated: December 6, 2013

---

[9] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. *See West Run Student Housing Associates, LLC v. Huntington National Bank*, No. 12-2430, 2013 WL 1338986, at *5 (3d Cir. Apr. 4, 2013) (collecting cases). *See also* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. *Id.*